IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

UNITED STATES OF AMERICA

          Plaintiff,

   v.

STATE OF OREGON and
COUNTY OF CLACKAMAS

          Defendants.

No. CV-11-452-HZ

OPINION AND ORDER

William B. Russell
UNITED STATES DEPARTMENT OF JUSTICE, TAX DIVISION
P.O. Box 227
Washington, DC 20044

Barry Bennett
BONNEVILLE POWER ADMINISTRATION
905 NE 11th Avenue
P.O. Box 3621
Portland, OR 97208-3621

1 - OPINION AND ORDER

Stephanie F. Konesky
BONNEVILLE POWER ADMINISTRATION
905 NE 11th Avenue
P.O. Box 3621
Portland, OR 97208

    Attorneys for Plaintiff

Marilyn J Harbur
STATE OF OREGON DEPARTMENT OF JUSTICE
1162 Court Street N
Salem, OR 97301

    Attorney for Defendant State of Oregon

Kathleen J. Hansa Rastetter
CLACKAMAS COUNTY COUNSEL
2051 Kaen Road
Oregon City, OR 97045

Stephen Lewis Madkour
CLACKAMAS COUNTY COUNSEL
2051 Kaen Road
Oregon City, OR 97045

    Attorneys for County of Clackamas

## INTRODUCTION

Plaintiff United States of America (the "Government" or "Plaintiff") filed this action seeking a declaratory judgment that the imposition of state tax by the State of Oregon ("Oregon") and Clackamas County (collectively "Defendants") on certain electric power Transmission Facility Projects ("Projects") is unconstitutional pursuant to 28 U.S.C. § 2201. Defendants filed Motions to Dismiss (doc. #6 and #8), asserting that this court lacks subject matter jurisdiction.

## BACKGROUND

This action arises out of the imposition of taxes by Defendants on certain Projects owned by Northwest Infrastructure Financing Corporation II ("NIFC II"). See Compl., ¶¶ 8, 10. NIFC II is a private corporation and special purpose entity which obtains financing for and acquires the Projects. Id., ¶¶ 10-11. Bonneville Power Administration ("Bonneville") is an instrumentality of the Government. Id., ¶ 14.

Pursuant to a Construction Agency Agreement ("Construction Agreement"), Bonneville constructs the Projects on behalf of NIFC II on real estate owned by Bonneville. Id., ¶ 16. The Construction Agreement authorizes Bonneville to use the financing obtained by NIFC II to pay the costs of constructing the Project. Id.

Pursuant to a Master Lease Agreement ("Lease Agreement"), NIFC II leases the Projects to Bonneville and the lease payments it receives from Bonneville are pledged as security for the loans. Id., ¶ 14. Under the Lease Agreement, all operational authority over the Projects remains with Bonneville. Id., ¶ 18. NIFC II has no control over the Projects, other than a limited right to inspect. Id. Bonneville has the option to acquire all the rights and interest in the Projects at any time during the lease in the amount of the remaining debt, plus a $10 purchase option fee. Id.

In early 2009, the issue of whether the imposition of Oregon taxes on the Projects is unconstitutional was presented by Bonneville to the Oregon Department of Revenue ("DOR"). See Decl. of Kathleen J. Rastetter ("Rastetter Decl."), Ex. 5, p. 2. The DOR issued a declaratory ruling on January 14, 2010, that the Projects belong to NIFC II for taxation purposes, and therefore the tax was not unconstitutionally discriminatory pursuant to the Supremacy Clause of the United States Constitution. See Compl., ¶ 21.

On May 6, 2010, the Government and Bonneville filed a complaint ("First Federal Complaint") with the United States District Court for the District of Oregon. The First Federal Complaint set forth three claims for relief. The first claim alleged that ORS 307.112 "impermissibly discriminates against the United States." See Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem."), Ex. 2, p. 5. It alleged, in pertinent part:

> The Supremacy Clause bars state taxation where the tax discriminates against the federal government or those with whom it deals. An Oregon tax on the Transmission Facility Projects would be discriminatory because, under Oregon Revised Statutes 307.112, Oregon exempts from taxation property held under a lease with Oregon state political subdivisions, yet Oregon seeks to impose a tax on identically situated properties of the federal government. Thus, the tax would be unconstitutional.

Id.

The second claim alleged that the Supremacy Clause bars state taxation of Government property, and since the Government is the beneficial owner of the Projects, the tax is unconstitutional. Id. The third and final claim alleged that the imposition of an Oregon tax on the Projects would violate ORS 307.040, which exempts Government property from taxation. Id.

On January 4, 2011, the Honorable Ancer L. Haggerty elected to "abstain jurisdiction" on all three claims, dismissing the matter without prejudice. See United States v. Oregon, Civil No. 10-528-HA, 2011 WL 11426, at *5 (D. Or. 2011). The Government and Bonneville filed a notice of appeal of Judge Haggerty's decision with the Ninth Circuit on March 2, 2011. See Defs.' Mem., Ex. 3, p. 1-4.

On April 13, 2011, Plaintiff filed this complaint ("Second Federal Complaint"). The Second Federal Complaint alleges facts nearly identical to those in the First Federal Complaint. It, however, brings only a single claim for relief, which is substantially similar in language to the

4 - OPINION AND ORDER

first claim in the First Federal Complaint. The claim in the Second Federal Complaint alleges the following:

> The Supremacy Clause bars state taxation where the tax discriminates against the federal government or those with whom it deals. An Oregon tax on the Transmission Facility Projects would be discriminatory because, under Oregon Revised Statutes section 307.112, Oregon exempts from taxation property held under a lease with Oregon state political subdivisions, yet does not exempt from taxation property held under a lease with the United States. Thus, the tax would be unconstitutional.

Compl., ¶ 23.

On April 14, 2011, Plaintiff filed an appeal to the DOR's January 14, 2010, decision with the Oregon Tax Court. See Def.'s Mem., p. 6.

### STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) addresses the court's subject matter jurisdiction. The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

A Rule 12(b)(1) motion may attack the substance of the complaint's jurisdictional allegations even though the allegations are formally sufficient. See Corrie v. Caterpillar, Inc., 503 F.3d 974, 979-80 (9th Cir. 2007); Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996) ("[U]nlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency[.]") (Internal quotation omitted). Additionally, the court may consider evidence outside the pleadings to resolve factual disputes. Robinson v. United States, 586 F.3d 683, 685 (9th Cir. 2009); see also Dreier, 106 F.3d


at 847 (a challenge to the court's subject matter jurisdiction under Rule 12(b)(1) may rely on affidavits or any other evidence properly before the court).

## DISCUSSION

### I. Appeal to Ninth Circuit

Defendants assert that Plaintiff's notice of appeal of Judge Haggerty's decision to the Ninth Circuit deprives this court of subject matter jurisdiction. Defendants cite <u>Griggs v. Provident Consumer Discount Co.</u>, 459 U.S. 56, 58 (1982) for the proposition that "[t]he filing of a notice of appeal . . . divests the district court of its control over those aspects of the case involved in the appeal." <u>Griggs</u>, however, does not support Defendants' position. In that case, the Supreme Court stated that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." <u>Id.</u> The case before me, however, is not the same case in which Plaintiff filed a notice of appeal. Rather, it is a separate case–a fact that Defendants readily concede. <u>See</u> Defs.' Mem., p. 3. Accordingly, Defendants' argument is unavailing.

### II. Res Judicata

Defendants assert that the doctrines of claim preclusion and issue preclusion bar Plaintiff from re-litigating this case. When a party invokes res judicata as to an order issued by a federal court, as here, federal law applies. <u>See, e.g.</u>, <u>BNSF Ry. Co. v. Albany & E. R.R. Co.</u>, 741 F. Supp. 2d 1184, 1192 (D. Or. 2010) (citations omitted).

> Res judicata, the preclusive effect of a previous adjudication, includes two doctrines, claim preclusion and issue preclusion. Claim preclusion bars a later suit if the first suit (1) involved the same parties or their privies; (2) reached a final judgment on the merits; and (3) involved the same claim as the later suit. Furthermore, claim preclusion prevents litigation of all grounds for, or defenses to, recovery that were

6 - OPINION AND ORDER

previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. The doctrine of issue preclusion, also known as collateral estoppel, prevents relitigation of issues actually litigated and necessarily decided in a prior proceeding, after a full and fair opportunity for litigation.

Numrich v. Harchenko, No. 04-1106-KI, 2004, WL 3087706, at *4-5 (D. Or. 2004).

Res judicata does not bar Plaintiff's action here because the matter before Judge Haggerty was dismissed "without prejudice" and accordingly, there was no "final judgment on the merits." See Id., at *5 (holding res judicata did not bar Plaintiff's present action because it was dismissed "without prejudice"). Likewise, collateral estoppel does not bar this action because there is no "relitigation of issues actually litigated and necessarily decided in a prior proceeding" where Judge Haggerty simply "elect[ed] to abstain jurisdiction" and dismissed the First Federal Complaint. See Id. (concluding collateral estoppel did not apply where the prior court "found it lacked jurisdiction and dismissed the action").

In short, I conclude that Plaintiff's claim is not barred by the doctrine of res judicata.

**III. Abstention**

Defendants contend that I should exercise my discretion to dismiss this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act grants a district court discretion to entertain a suit for declaratory relief. See 28 U.S.C. § 2201(a). 28 U.S.C. § 2201(a) provides in relevant part:

> In a case of actual controversy within its jurisdiction, [exceptions omitted] . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

7 - OPINION AND ORDER

The authority granted under this section is clearly permissive, not mandatory. See, e.g., Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998). However, the district court must determine on the record whether it should exercise its discretion, guided by the factors identified in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942) and its progeny. See Dizol, 133 F.3d at 1223-25. The factors identified in Brillhart include: "(1) whether a refusal to entertain the request for declaratory relief avoids needless decisions of state law by the federal court; (2) whether the action is a means of forum shopping; and (3) whether dismissal of the claim for declaratory relief would avoid duplicative litigation." Smith v. Lenches, 263 F.3d 972, 977 (9th Cir. 2001) (citation omitted). Those factors are not exhaustive. See Dizol, 133 F.3d at 1225 n.5.

### A. Avoiding Needless Determination of State Law

With respect to the first factor, Plaintiff asserts that unlike the First Federal Complaint, the Second Federal Complaint raises a constitutional question, not state law questions. Plaintiff's argument is unavailing. The first claim in the First Federal Complaint and the claim at issue here are nearly identical. In fact, the only thing that has changed significantly with respect to the claims is Plaintiff's arguments. Plaintiff's arguments, however, arise out of nearly the same claim and facts. Indeed, this claim is presently before the Oregon Tax Court, "the exclusive forum for the determination of all questions of law and fact arising under Oregon's tax laws [and the forum which] provides an adequate remedy for these questions . . . ." United States v. Oregon, Civil No. 10-528-HA, 2011 WL 11426, at *3 (internal citations omitted). Accordingly, I find that this factor weighs in favor of dismissal because deciding this matter would entail the needless determination of state law issues.

8 - OPINION AND ORDER

### B. Deterring Forum Shopping

Turning to the second factor, Plaintiff asserts that seeking to have their federal constitutional claim decided in a federal forum does not amount to forum shopping. The Ninth Circuit has noted that "federal courts should generally decline to entertain reactive declaratory actions." Dizol, 133 F.3d at 1225. Plaintiff has already litigated this claim in federal court before Judge Haggerty. Despite having done so, it now bring the same claim before me, albeit with different arguments. Moreover, Plaintiff has also filed this claim with the DOR and has brought it on appeal before the Oregon Tax Court and the Ninth Circuit.

Under the present facts, I conclude that allowing Plaintiff's claim for declaratory relief to proceed in the present case would encourage forum shopping. Accordingly, I find that this factor weighs in favor of dismissal.

### C. Avoiding Duplicative Litigation

The third Brillhart factor asks whether dismissal of the declaratory action would avoid duplicative litigation. Plaintiff asserts there would be no duplicative litigation because it intends to seek a stay of the state-court action. A stay in the action before the Oregon Tax Court, however, would contravene Judge Haggerty's order "to provide [the Government and Bonneville] with an opportunity to appeal [the DOR's decision] to the Oregon Tax Court." United States v. Oregon, Civil No. 10-528-HA, 2011 WL 11426, at *5. Furthermore, the claims before the Oregon Tax Court, the Ninth Circuit, and this court are nearly identical and therefore, would likely result in duplicative litigation. Accordingly, I find that this factor also weighs heavily in favor of declining jurisdiction.

9 - OPINION AND ORDER

**D. Other Pertinent Factors**

In Dizol, 133 F.3d at 1225 n.5, the Ninth Circuit identified a non-exhaustive list of other factors that may be considered in deciding whether to exercise jurisdiction, including: (1) whether the declaratory judgment action will settle all aspects of the controversy; (2) whether the declaratory judgment action will serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; (4) whether the declaratory judgment action will result in entanglement between the federal and state court systems; (5) the convenience of the parties; and (6) the availability and convenience of other remedies. I find that the Dizol factors weigh in favor of dismissing this action.

With respect to the first factor, a declaratory judgment in this case would not resolve all the claims before the Oregon Tax Court or the Ninth Circuit. In addition to the claim at issue here, the actions before the Oregon Tax Court and the Ninth Circuit include two other claims and accordingly, the Oregon Tax Court action and the action on appeal before the Ninth Circuit would proceed regardless of my decision. The facts here also indicate some aspect of procedural fencing, especially where Judge Haggerty has already issued an order abstaining jurisdiction on the claim presently before me. Additionally, given the fact that this claim is presently pending before the Oregon Tax Court pursuant to Judge Haggerty's order and is on appeal to the Ninth Circuit, an entanglement between the federal and state court systems and an inconvenience to the parties would be likely if this court were to entertain jurisdiction over this matter. Lastly, the availability of a remedy for Plaintiff in the Oregon Tax Court, and possibly, the Ninth Circuit also weighs in favor of dismissing this action.

10 - OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, retaining jurisdiction under these circumstances would not be appropriate. Defendants' Motions to Dismiss (doc. #6 and #8) are granted.

IT IS SO ORDERED.

Dated this 24th day of June, 2011.

                                                     /s/ Marco A. Hernandez
                                                     MARCO A. HERNANDEZ
                                                     United States District Judge